NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

NO. 28879

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
MELISSA ROSE MAGBITANG, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 05-1-2216)

SUMMARY DISPOSITION ORDER
(By: Nakamura, Chief Judge, Fujise and Leonard, JJ.)

Defendant-Appellant Melissa Rose Magbitang (**Magbitang**), also known as Melissa Rose Victoria, appeals the Judgment filed on November 6, 2007, in the Circuit Court of the First Circuit (**Circuit Court**).[1]

Magbitang was convicted of Promoting a Dangerous Drug in the Third Degree, in violation of Hawaii Revised Statutes (**HRS**) § 712-1243 (Supp. 2008)[2] and Unlawful Use of Drug Paraphernalia, in violation of HRS § 329-43.5(a) (1993).[3]

---

[1]   The Honorable Richard W. Pollack presided.

[2]   HRS § 712-1243(1) provides:

   **§ 712-1243  Promoting a dangerous drug in the third degree.** (1) A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount.

[3]   HRS § 329-43.5(a) provides:

   **§ 329-43.5 Prohibited acts related to drug paraphernalia.** (a) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706-660 and, if appropriate as provided in section 706-641, fined pursuant to section 706-640.

On appeal, Magbitang contends that: (1) in four instances, the Deputy Prosecuting Attorney (**DPA**) made improper comments during his closing and rebuttal arguments which amounted to prosecutorial misconduct; and (2) there was insufficient evidence to convict Magbitang of Promoting a Dangerous Drug in the Third Degree and Unlawful Use of Drug Paraphernalia.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Magbitang's points of error as follows:

### Alleged Prosecutorial Misconduct

In State v. Agrabante, 73 Haw. 179, 830 P.2d 492 (1992), the Hawaii Supreme Court stated:

> Prosecutorial misconduct may provide grounds for a new trial if the prosecutor's actions denied the defendant a fair trial. State v. Pemberton, 71 Haw. 466, 796 P.2d 80 (1990). In order to determine whether the alleged prosecutorial misconduct reached the level of reversible error, we consider the nature of the alleged misconduct, the promptness or lack of a curative instruction, and the strength or weakness of the evidence against defendant. State v. Senteno, 69 Haw. 363, 366, 742 P.2d 369, 372 (1987) (citing State v. Marsh, 68 Haw. 659, 661, 728 P.2d 1301, 1303 (1986)).

73 Haw. at 198, 830 P.2d at 502; see also State v. Maluia, 107 Hawai'i 20, 26, 108 P.3d 974, 980 (2005) (when a defendant alleges prosecutorial misconduct, the court must decide: (1) whether the conduct was improper; (2) if improper, whether the misconduct was harmless beyond a reasonable doubt; and (3) if not harmless beyond a reasonable doubt, whether the misconduct was so egregious as to bar reprosecution); State v. Palabay, 9 Haw. App. 414, 429, 844 P.2d 1, 9 (1992) (an attempt to persuade jury through deceptive argument is considered to be prosecutorial misconduct).

Magbitang argues that the DPA's comment in closing argument that there was no evidence that a remote control would activate a "Mega Touch machine" was misconduct because the

Circuit Court had granted the defendant's motion in limine to preclude the introduction into evidence of police testimony regarding gambling activities at the premises where she was arrested for drug-related offenses. Magbitang argues that the DPA's remarks were intended to mislead the jury to conclude that her testimony that she was reaching for a remote control that would turn off a Mega Touch gambling machine - and not reaching for the pouches containing drugs and drug paraphernalia - was not credible.

First, any error stemming from the alleged improper comment during the DPA's closing argument was waived because no objection was made. HRAP Rule 28(b)(4). Even if it was not waived, the comments made during the prosecution's closing argument were not improper because they stemmed from Magbitang's own testimony as to both the existence of the Mega Touch machine and the remote control that would control it. A prosecutor may properly comment on the state of the evidence and the failure of the defense to introduce material evidence. State v. Napulou, 85 Hawai'i 49, 59, 936 P.2d 1297, 1307 (App. 1997). Notwithstanding the motion in limine ruling, Magbitang's defense was that, when she disobeyed the police officer's orders to keep her hands up, she was trying to reach for the remote control, not the drugs. It was not impermissible for the DPA to comment on the strength of that defense in light of the evidence or lack of evidence before the jury.

Magbitang also contends that various similar comments made during the DPA's rebuttal argument were improper. We conclude that, in the rebuttal, the DPA went beyond permissible comments on the state of the evidence to inviting the jury to draw an inference that he knew to be false:

> What you're called on as jurors is to look at the evidence. And the State has the absolute burden of proof, and we never shift that. The burden is always on the State. But before you find a reasonable doubt based on the defendant's testimony, ask yourself is it rooted in any evidence?

[Defense counsel] is very thorough when she went over with the officers. Hey, Officer Yang, you went there four times. You never saw any evidence of drugs or drug activity? And he admitted he didn't. **But did any testimony come in from Officer Yang that he observed any Mega Touch machines, that he observed any gambling devices, that he engaged in any illegal gambling? They went there to investigate illegal gambling, true. They wanted to know, hey, do you have these machines on your premises? Is that stuff there? His whole point, four different occasions hours at a time, and you heard no testimony from Officer Yang about any Mega Touch machines.**

Well, then the raid occurs on May 19th. Officers sweep in. Not one officer, not two officers. Five, up to ten officers raid the Game establishment. A number of them took the stand, including the case agent, the basically officer-in-charge, Officer Yrojo. **No testimony about any Mega Touch machines. Their whole purpose there was to serve a search warrant and search for illegal game. Do you think they would miss - -**

(Emphasis added.)

The DPA clearly was not simply arguing that there was no evidence that the remote control operated gambling machines. Knowing that there were in fact gambling machines found on the premises, the DPA asked the jury to infer that there were no gambling machines because there was no testimony from the police officers about the gambling machines.

At this point, defense counsel asked to approach the bench and raised an objection, noting that the DPA was "arguing things that were in limined out and that's the only reason they are not in evidence." The DPA pointed out to the Circuit Court that the defense should not have filed the motion in limine to exclude testimony and other evidence of the gambling machines, if the existence of the gambling machines was central to the defendant's explanation of her conduct. The Circuit Court sustained the objection, but did not strike the prosecutor's remarks.

As soon as the rebuttal argument resumed, the DPA continued: "No evidence, no evidence of the Mega Touch machine there --"[.] Magbitang's objection was sustained and the jury was instructed to disregard the last comment. The DPA

nevertheless forged ahead with this line of argument, ". . . if you're asking yourself where are the fingerprints, ask yourself where everything else is that is claimed to exist on the premises." Again, Magbitang's objection was sustained and the jury was instructed to disregard the comment.

We are cognizant of the DPA's dilemma. The defense successfully argued that the State should be precluded from introducing testimony by police and other evidence of the gambling activities observed at the premises where Magbitang was arrested, and then proceeded to explain defendant's conduct as reaching for a device to turn off the gambling machines, rather than reaching for the pouches containing drugs. Nevertheless, the prosecution may not ask the jury to draw an inference that it knows is not true.

Upon review of the record, we conclude that there is a reasonable possibility that the prosecution's improper statements might have contributed to Magbitang's conviction. The evidence that the pouches belonged to Magbitang was not so overwhelming that we are convinced that the prosecution's attempts to dissuade the jury from believing the defendant's testimony about the presence of gambling machines may not have contributed to Magbitang's conviction. See, e.g., State v. Suan, 121 Hawai'i 169, 176, 214 P.3d 1159, 1166 (App. 2009) (cumulative effect of prosecutor's improper comments substantially prejudiced the defendant's right to a fair trial); State v. Pulse, 83 Hawai'i 229, 244, 925 P.2d 797, 812 (1996) (same). Although the Circuit Court promptly struck most of the improper portions of the rebuttal argument, we cannot conclude that the unstricken statements, combined with the repeated attempts to lead the jury to a false conclusion, constituted harmless error beyond a

reasonable doubt.[4]  Accordingly, we must vacate Magbitang's conviction and remand for a new trial.[5]

<u>Sufficiency of the Evidence</u>

Magbitang claims that there was insufficient evidence to convict her of Promoting a Dangerous Drug in the Third Degree, in violation of HRS § 712-1243 and Unlawful Use of Drug Paraphernalia, in violation of HRS § 329-43.5(a).

When the evidence adduced in the trial court is considered in the strongest light for the prosecution, there was substantial evidence to support Magbitang's convictions.  <u>State v. Richie</u>, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998) (quoting <u>State v. Quitog</u>, 85 Hawai'i 128, 145, 938 P.2d 559, 576 (1997)).

When the officers entered and searched the premises, Magbitang was the only person sitting behind the counter where a green pouch and black pouch were found.  The green pouch contained 2 packets of methamphetamine ("meth") and, the black pouch contained, *inter alia*, a digital scale, numerous empty Ziploc packets, Q-tips, a plastic straw cut at an angle which had residue resembling meth, and also a card cut at an angle. Methamphetamine is a dangerous drug.  HRS §§ 329-16(e)(2) and 712-1240.  One of the officers testified that the scale, empty packets, and cut card/straw were instruments used to weigh, hold, and scoop narcotics.  Given the difficulty of proving the requisite mind set by direct evidence in criminal cases, proof by circumstantial evidence and reasonable inferences arising from the defendant's conduct is sufficient to prove intent.  <u>State v. Stocker</u>, 90 Hawai'i 85, 92, 976 P.2d 399, 406 (1999).  An officer testified that after Magbitang was told to hold up her hands, she twice lowered her left hand which looked like she was reaching

---

[4]    Magbitang does not argue that the conduct was so egregious as to bar reprosecution.  We agree.

[5]    We note, however, that the Circuit Court may revisit its ruling on defendant's motion in limine, in light of the defendant's reliance on the existence of the gambling machines.

for something. The green pouch and black pouch were under a counter where Magbitang was sitting on her left side. The jury could have reasonably inferred that Magbitang was reaching for the green and black pouches which belonged to her and concluded that she possessed methamphetamine and drug paraphernalia.

Accordingly, as the evidence in the record was legally sufficient to support a conviction, the Circuit Court's November 6, 2007 Judgment is vacated and the case is remanded for a new trial.

DATED: Honolulu, Hawai'i, January 28, 2010.

On the briefs:

Phyllis J. Hironaka
Deputy Public Defender
for Defendant-Appellant

Donn Fudo
Deputy Prosecuting Attorney
for Plaintiff-Appellee

Chief Judge

Associate Judge

Associate Judge