**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000117
28-JUN-2021
07:54 AM
Dkt. 50 SO**

NO. CAAP-19-0000117

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee, v.
VANCE OKIHARA, also known as
Vance M. Okihara, Defendant-Appellant

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(CASE NO. 1FFC-18-0000249)


SUMMARY DISPOSITION ORDER
(By: Ginoza, C.J., and Wadsworth and Nakasone, JJ.)

Defendant-Appellant Vance Okihara, also known as Vance M. Okihara (**Okihara**), appeals from the Judgment of Conviction and Sentence; Notice Of Entry, filed on February 1, 2019, in the Family Court of the First Circuit.[1/] After a jury trial, Okihara was convicted of Abuse of Family or Household Members, in violation of Hawaii Revised Statutes (**HRS**) Section 709-906(1) (Supp. 2017).[2/]

---

[1/]  The Honorable Kevin A. Souza presided.

[2/]  HRS § 706-906(1) provides, in relevant part:

   It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member . . . .

   For the purposes of this section:

   . . . .

   "Family or household member":

   (a)  Means spouses or reciprocal beneficiaries, former spouses or reciprocal beneficiaries,

(continued...)

On appeal, Okihara contends that the State committed several acts of prosecutorial misconduct during its closing argument, which adversely affected Okihara's right to a fair trial. Specifically, Okihara argues that during the State's closing argument, the deputy prosecuting attorney (**DPA**) improperly: (1) imposed his personal opinion regarding the credibility of the complaining witness (**CW**); (2) introduced facts not in evidence; (3) commented on and drew attention to Okihara's failure to testify; (4) shifted the burden of proof to the defense; and (5) misstated the law regarding the State's burden to prove guilt beyond a reasonable doubt.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Okihara's contentions as follows:

The issue we find dispositive is whether the prosecutor improperly commented on and drew attention to Okihara's failure to testify at trial. Okihara asserts that he was "the only person who could contradict [the] CW's testimony" regarding the alleged abuse, and he chose not to testify. Okihara argues that in closing arguments, "[t]he DPA repeatedly referenced [the] CW's testimony as not being contradicted at trial, thereby calling attention to the fact that Okihara did not take the stand[,]" such that the "DPA's statements [would] naturally [be] taken [by the jury] as comment on Okihara's failure to testify in his own defense[.]"

Okihara did not object to the DPA's allegedly improper comments at trial. "When defense counsel fails to object to prosecutorial misconduct at trial, we may still recognize such misconduct if it affected the defendant's substantial rights, such that the circuit court's failure to take corrective action constituted plain error." State v. Austin, 143 Hawaiʻi 18, 40,

---

²/(...continued)
persons in a dating relationship as defined under section 586-1, persons who have a child in common, parents, children, persons related by consanguinity, and persons jointly residing or formerly residing in the same dwelling unit[.]

422 P.3d 18, 40 (2018) (citing State v. Wakisaka, 102 Hawaiʻi 504, 513, 78 P.3d 317, 326 (2003)).

> [Our] analysis proceeds in two steps.  First, we determine whether the prosecutor's actions constituted misconduct. [State v. ]Clark, 83 Hawaiʻi [289,] 304, 926 P.2d [194,] 209 [(1996)].  If we conclude that the prosecutor's actions were improper, we analyze whether the action affected the defendant's substantial rights, such that the circuit court plainly erred by not intervening and taking remedial action. Id.

Austin, 143 Hawaiʻi at 40, 422 P.3d at 40.

"As a rule, the prosecution cannot comment on the defendant's failure to testify because this infringes on the defendant's right not to be a witness against her- or himself." Wakisaka, 102 Hawaiʻi at 515, 78 P.3d at 328 (citing Haw. Const. art. I, § 19).  "The prosecution's comment on a defendant's failure to testify will be deemed improper if that comment was 'manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'"  Id. (quoting State v. Padilla, 57 Haw. 150, 158, 552 P.2d 357, 362 (1976) (quoting United States v. Wright, 309 F.2d 735, 738 (7th Cir. 1962))) (internal quotation marks omitted).

> The prosecution is entitled to call attention to the fact that the testimony of the witnesses for the prosecution has not been controverted, unless the circumstance that the defendant is the only one who could possibly contradict that testimony would necessarily direct the jury's attention solely to the defendant's failure to testify.

Padilla, 57 Haw. at 158, 552 P.2d at 362–63, overruled on other grounds by State v. Kaneaiakala, 145 Hawaiʻi 231, 450 P.3d 761 (2019), and abrogated on other grounds by State v. Cabagbag, 127 Hawaiʻi 302, 277 P.3d 1027 (2012); see Wakisaka, 102 Hawaiʻi at 515, 78 P.3d at 328.

On appeal, Okihara contends that the DPA improperly commented on Okihara's failure to testify, by making the following underlined statements during closing and rebuttal arguments:

> At the beginning of this case I told you we are here today because of what the defendant did to [the CW] on the night of February 23rd, 2018, when they were home alone.
>
> Now, ladies and gentlemen, we have direct evidence of what happened that night.  And direct evidence is defined on

page 5 of your jury instructions.  We have the testimony of [the CW].

And some of you may be wondering:  Is that enough?  And the answer to that is on page 10 of your jury instructions.  If the testimony -- it is the testimony of a single witness, if believed, is enough to prove a fact.  That makes sense because <u>there were only two people there who could have told us what happened</u>.  <u>Only two people were there when the defendant physically abused [the CW]</u>.

So why should we believe her?  Three reasons, ladies and gentlemen.  Reason number 1, her testimony was credible.  Reason number 2, other evidence supports her testimony.  And reason number 3, <u>there is no contradictory evidence</u>.

. . . .

And I want to go back to just one more thing.  Reason number 3, <u>there is no contradictory evidence</u>.  And the defense does not have to call any witnesses and the defendant doesn't have to testify <u>but that doesn't change the fact that there is no witness who tells you anything differently happened</u>.

\* \* \*

You just heard defense counsel's closing arguments.  Now, let me ask you this.  Aside from arguments and her questions during the trial, which are not evidence, <u>what evidence is there to say that this never happened?  There isn't</u>.  The only evidence that we have is that [the CW] said that at some point that night he grabbed her by the shirt and threw her to the ground.  The only evidence we have today is that at some point during that night he kicked her . . . .

(Emphases added.)

In <u>State v. Faatea</u>, No. CAAP-17-0000357, 2018 WL 3199236, at \*3 (Haw. App. 2018), we considered a similar case in which the defendant was charged under HRS § 709-906(1) with abuse of a family member.  We noted that only the complaining witness and the defendant were present when the alleged abuse occurred, the defendant was the only person who could contradict the complaining witness's testimony, and the defendant chose not to testify at trial.  2018 WL 3199263, at \*3.  On three occasions, the prosecutor referenced the complaining witness's testimony as not being contradicted at trial.  Specifically, the prosecutor stated: "[CW] was telling the truth and there was no evidence to show she was not"; "Now, again, there's no evidence to show that she is lying[]"; and "If you choose to agree with [CW], and there's no reason not to, you must find the defendant guilty." <u>Id.</u>  We concluded that these comments "did indirectly and repeatedly reference and call attention to [the defendant's]

4

failure to testify at trial" and "would naturally and necessarily be taken as a comment on [the defendant's] decision not to testify in his own defense[.]"  Id.

Similarly, here, the evidence indicated that only Okihara and the CW were present when the alleged abuse occurred, such that Okihara was the only person who could contradict the CW's testimony about the incident.  The DPA drew the jury's attention to this circumstance by stating:  "[T]here were only two people there who could have told us what happened.  Only two people were there when the defendant physically abused [the CW]."  As in Faatea, the DPA then repeatedly referenced the CW's testimony as not being contradicted.  In one of these instances, the DPA explicitly reminded the jury that Okihara did not testify, stating:  "the defendant doesn't have to testify but that doesn't change the fact that there is no witness who tells you anything differently happened."  See Wakisaka, 102 Hawaiʻi at 515-16, 78 P.3d at 328-29 (ruling that the State improperly commented on the defendant's failure to testify, where the prosecution argued to the jury that the defendant was alone with the victim, that "[h]e would know," and that "[i]f [the defendant] doesn't tell us, we can only look to [the victim] and see what her body tells us").  On this record, we conclude that the DPA's statements indirectly and repeatedly referenced and called attention to Okihara's failure to testify.  We further conclude that the statements would naturally and necessarily be taken as a comment on Okihara's decision not to testify on his own defense, in violation of the direction in Padilla.

Having concluded that the State's actions were improper, we next analyze whether they affected Okihara's substantial rights, such that the circuit court plainly erred by not intervening and taking remedial action.  See Austin, 143 Hawaiʻi at 40, 422 P.3d at 40 (citing Clark, 83 Hawaiʻi at 304, 926 P.2d. at 209).  In that regard, we will not overturn a defendant's conviction on the basis of plainly erroneous prosecutorial misconduct unless "there is a reasonable possibility that the misconduct complained of might have contributed to the conviction."  Wakisaka, 102 Hawaiʻi at 513, 78

P.3d at 326 (quoting State v. Rogan, 91 Hawaiʻi 405, 412, 984 P.2d 1231, 1238 (1999)).

> Allegations of prosecutorial misconduct are reviewed under the harmless beyond a reasonable doubt standard, which requires an examination of the record and a determination of "whether there is a reasonable possibility that the error complained of might have contributed to the conviction." Factors considered are: (1) the nature of the conduct; (2) the promptness of a curative instruction; and (3) the strength or weakness of the evidence against the defendant.

Id. (quoting State v. Sawyer, 88 Hawaiʻi 325, 329 n.6, 966 P.2d 637, 641 n.6 (1998)).

On this record, we cannot conclude beyond a reasonable doubt that the DPA's improper comments did not contribute to Okihara's conviction. In considering the nature of the conduct at issue, we recognize that the DPA's repeated statements calling attention to Okihara's failure to testify infringed on his constitutional right not to be a witness against himself. See Wakisaka, 102 Hawaiʻi at 515, 78 P.3d at 328. We further note that no curative instruction was given to the jury regarding the DPA's improper comments – a factor that weighs heavily in Okihara's favor. See id. at 516, 78 P.3d at 329.

In reviewing the evidence, we also cannot say that the DPA's improper statements did not contribute to Okihara's conviction. Given that only Okihara and the CW were present when the alleged abuse occurred, the jury had to decide whether to believe the CW's account of events. In short, the determination of Okihara's guilt depended on the jury's assessment of the CW's credibility. In this context, the DPA's repeated statements that the CW's testimony was not contradicted likely had a direct impact on the jury's assessment of the CW's credibility and called attention to Okihara's right not to testify at trial. See State v. Marsh, 68 Haw. 659, 661, 728 P.2d 1301, 1302 (1986) (because credibility was a central issue in the case, the supreme court could not "conclude beyond a reasonable doubt that the prosecutor's remarks had little likelihood of influencing this critical choice"). Given that no step was taken to cure the harm from the misconduct, we conclude there is a reasonable possibility that the error contributed to Okihara's conviction.

Accordingly, we conclude there was plain error that affected Okihara's substantial rights.

In light of our conclusion, we do not reach Okihara's other arguments on appeal.

Therefore, IT IS HEREBY ORDERED that the Judgment of Conviction and Sentence; Notice Of Entry, filed on February 1, 2019, in the Family Court of the First Circuit, is vacated. The case is remanded to the Family Court for further proceedings consistent with this Summary Disposition Order.

DATED: Honolulu, Hawaiʻi, June 28, 2021.


On the briefs:

Susan L. Arnett,
Deputy Public Defender,
for Defendant-Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge